

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JAM/EHS

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 31, 2023

<u>By ECF</u>

The Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Nikolay Goltsev et al.
     <u>Docket No. 23-MJ-596 (LB)   </u>

Dear Judge Bloom:

   The government writes regarding defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV and KRISTINA PUZYREVA, who have been charged in the above-referenced complaint (the "Complaint").  As described in the Complaint and herein, each of these defendants present a serious flight risk and have significant ties to foreign jurisdictions, including non-extradition countries.  The government therefore moves for orders of detention pending trial.

I.  <u>Relevant Background</u>[1]

  A. <u>The Defendants</u>

   GOLTSEV is a dual Russian and Canadian national who resides in Montreal, Canada.  GOLTSEV has served as an account manager and purchasing coordinator for Electronic Network, Inc. ("Electronic Network"), a company based in Montreal, Canada.  On or about February 24, 2023, Electronic Network was sanctioned by the U.S. Department of Commerce "based on information that [Electronic Network and other sanctioned companies] significantly contribute to Russia's military and/or defense industrial base and are involved in activities contrary to U.S. national security and foreign policy interests."  <u>See</u> 88 Fed. Reg.

---

[1] Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant.  <u>See</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

12170 (Feb. 27, 2022). As described in the Complaint, GOLTSEV has long-standing relationships with individuals and entities based in Russia and has procured electronic components for Russian military end users and sanctioned companies for over twelve years.

PUZYREVA is a dual Russian and Canadian national who resides in Montreal, Canada and is married to GOLTSEV. PUZYREVA is the named principal of Simatech Group Inc., a Canadian company affiliated with Electronic Network. She has received over 130 packages at her Canadian address from U.S. electronics distributors over approximately the last five years.

NASRIDDINOV is a dual national of Tajikistan and Russia and resides in Brooklyn, New York. NASRIDDINOV has a doctorate and is a published author regarding integrated systems and other technologies. On or about June 11, 2021, NASRIDDINOV founded SH Brothers Inc. ("SH Brothers"), a company with a listed addresses in Brooklyn, New York. On or about January 30, 2023, NASRIDDINOV founded SN Electronics, Inc. ("SN Electronics"), a company with listed addresses in Brooklyn, New York. SN Electronics was registered in NASRIDDINOV's wife's name.

B. The Offense Conduct

Since at least 2022, GOLTSEV, NASRIDDINOV, PUZYREVA and other co-conspirators have engaged in a sophisticated export control and sanctions evasion scheme involving SH Brothers and SN Electronics. Using the SH Brothers and SN Electronics corporate entities, the defendants unlawfully sourced, purchased and shipped millions of dollars in dual-use electronics from U.S. manufacturers to end users, including sanctioned entities, in Russia.

Many of the electronic components and integrated circuits shipped by the defendants through SH Brothers were designated as "Tier 1" items on the Department of Commerce's Common High Priority Items List, which, are "of the highest concern due to their critical role in the production of advanced Russian precision-guided weapons systems, Russia's lack of domestic production, and limited global manufacturers." Indeed, some of the same electronic components and integrated circuits shipped by the defendants through SH Brothers have been found in seized Russian weapons platforms and signals intelligence equipment in Ukraine, including the Torn-MDM radio reconnaissance complex, the RB-301B "Borisoglebsk-2" electronic warfare complex, the Izdeliye 305E light multi-purpose guided missile, the Vitebsk L370 airborne counter missile system, Ka-52 helicopters, Orlan-10 unmanned aerial vehicles ("UAVs") and T-72B3 battle tanks.

During the period charged in the Complaint, SH Brothers has been one of the largest exporters of integrated circuits to Russia via third-country transhippers. Indeed, in or about and between August 2022 and September 2023, SH Brothers made over 266 shipments of electronic components valued at approximately $7,174,693 that were sent to known third-country transshipment entities and then sent to Russia.

As alleged in the Complaint, NASRIDDINOV and GOLTSEV would purchase electronic components from U.S. manufacturers and distributors under the auspices of SH Brothers and SN Electronics. They would then unlawfully ship the items to a variety of intermediary corporations located in other countries, including Turkey, Hong Kong, India, China and the United Arab Emirates, which are common transshipment points for items that are illicitly exported to Russia. As alleged in the Complaint, some of these companies received shipments solely from SH Brothers and appeared to have no other business. The electronics were then rerouted and sent to Russian end users in violation of U.S. criminal statutes and other regulations.

GOLTSEV would receive orders from Russian entities and interface directly with U.S. electronics manufacturers and distributors, as well with U.S. Customs officials, to consummate orders and illicit exports. In doing so, GOLTSEV used various aliases, which he described as his "creative pseudonyms" to other coconspirators. In his communications with both U.S. companies and government officials, GOLTSEV misrepresented and omitted material information, including information about how the items would be used, the various parties involved in the transactions, and the identities of the ultimate Russian end users.

NASRIDDINOV would handle the actual receipt of deliveries from the U.S. companies at addresses in Brooklyn, repackage them, and ship them abroad. NASRIDDINOV also made frequent trips to Russia and maintained Russian bank accounts in furtherance of the scheme, as reflected in travel records and financial documents.[2] In a text message exchange between NASRIDDINOV and GOLTSEV in or about and between June 8, 2022 and June 9, 2022, NASRIDDINOV stated, "I spoke with the guys, we will set it up through America, I got to Moscow, tomorrow will also have a meeting, we decided upon logistics, if you have people in Moscow we can also meet and discuss the scheme so that they would pick up from Moscow." GOLTSEV responded that he had "many orders," but that it was "becoming difficult to do business here [in Canada], maybe it will be easier to do through the US . . . everything is loaded from the USA . . . everything that needs to be received, payment place the orders, get the goods together and unload it in any 'friendly' country."

GOLTSEV and PUZYREVA would travel from Canada to meet with NASRIDDINOV in Brooklyn. During such trips, PUZYREVA would utilize numerous bank accounts to make financial transactions in furtherance of the scheme. For example, PUZYREVA is the signatory on two New York accounts, including one that lists NASRIDDINOV's home address in Brooklyn as the address of record. Records for these accounts reflect large, structured cash deposits in Brooklyn and Manhattan that correspond with trips that PUZYREVA and GOLTSEV made to New York. These deposits were then transferred to accounts held and used by PUZYREVA and GOLTSEV in Canada.

---

[2] NASRIDDINOV has not filed Reports of Foreign Bank and Financial Accounts ("FBARs") for these accounts.

3

The scheme involved millions of dollars in transactions and was lucrative for the defendants. For example, in a September 15, 2022 text message from NASRIDDINOV to GOLTSEV, NASRIDDINOV boasted, "SH [Brothers] is one of the best companies in the world, it's time to move forward onto the stock exchange and stock market, capital should be in the billions, we are working." GOLTSEV responded, "pushing components to those who need it I can do, everything else you will have to teach me [three smile emojis]." In a text message exchange on or about January 13, 2023, GOLTSEV complained to PUZYREVA that a subordinate of a codefendant "asked me to make 80 accounts . . . I am making accounts for 3 mln [i.e., million]. Fingers hurting already from the laptop." PUZYREVA responded, "Lot of money? We will get rich." Later, on or about January 20, 2023, GOLTSEV messaged PUZYREVA, "Dasha [codefendant's employee] paid. 700k." Notably, financial records revealed wire transfers totaling approximately $700,000 into an SH Brothers account in or around January 2023 from the Hong Kong-based Robotronix as part of an order for a sanctioned Russian entity.

NASRIDDINOV and GOLTSEV were aware that the electronics being exported had potential military applications. This is explicitly acknowledged in chat communications between GOLTSEV and NASRIDDINOV. For example, in a message exchange on or about and between November 8, 2022 and November 15, 2022 between NASRIDDINOV and GOLTSEV, GOLTSEV commented how shipping to Russia had become "dangerous" and discussed a shipment of electronic components that had been detained by U.S. officials at John F. Kennedy International Airport ("JFK") in Queens, New York. NASSRIDINOV responded that "Ukrainians alleged that they're being bombed from parts from there [the U.S. manufacturer], maybe that's why they started investigating everything?" GOLTSEV responded that, "we need to figure out why they keep holding the package . . . I don't really understand how they figured [it] out." In a subsequent message, on or about November 9, 2022, GOLTSEV commented that, "in the future we will need to load from several companies, not to attract attention . . . for now large packages will be dangerous until we understand what they figured out . . . we will need to think of diversifying the load . . . so that not everything is not moving from the same deck." In a February 23, 2023 message, NASRIDDINOV wrote to GOLTSEV, "Happy Defender of the Fatherland," referring to the holiday in Russia and parts of the former Soviet Union celebrating those who served in the armed forces. GOLTSEV responded, "happy holiday to you too my friend, we are defending it in the way that we can [smile emoji]."

Incident to the defendants' arrest earlier today, approximately $20,000 in cash was recovered from GOLTSEV and PUZYREVA, while dozens of boxes containing thousands of semiconductors and other electronic components were recovered from NASRIDDINOV's residence in Brooklyn:



II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).  As discussed below, these factors weigh against pretrial release and necessitate a sizable bail package.

III.    <u>The Statutory Factors Weigh Heavily in Favor of Detention</u>

As set forth below, the factors to be considered in the detention analysis show that the defendants present significant flight risks.

<u>First</u>, the charged offenses are serious. The defendants are charged in a transnational sanctions and export control evasion scheme for the benefit of a foreign power that is actively engaged in armed conflict. While the investigation is ongoing, the evidence amassed against GOLTSEV, NASRIDDINOV and PUZYREVA is substantial, including, <u>inter</u> <u>alia</u>, (1) electronic communications amongst the defendants and other coconspirators; (2) invoices, shipping documents and other business records containing false information, including official forms filed with the Department of Commerce and other government agencies; and (3) bank and other financial records reflecting the establishment and use of shell companies and illicit money movements. <u>See</u>, <u>e.g.</u>, <u>United States v. Fishenko</u>, No. 12-CR-626, 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013) (evidence of "pertinent recorded conversations and email exchanges that reveal [the defendant's] role in the conspiracy" weighed against release).

<u>Second</u>, the defendants face significant terms of incarceration should they be convicted, which provides powerful incentive for him to flee. <u>See</u>, <u>e.g.</u>, <u>United States v. Bruno</u>, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When the sentence . . . upon conviction is likely to be long . . . a defendant has stronger motives to flee."). Under the United States Sentencing Guidelines, the government estimates that the Base Offense Level applicable to the defendants is a 26, with a range of imprisonment of 63-78 months, assuming the defendants fall into Criminal History Category I and without factoring in any applicable enhancements or adjustments.

<u>Third</u>, while NASRIDDINOV has significant ties to this jurisdiction and the United States, he is a dual citizen of Russia and Tajikistan, neither of which have an extradition treaty with the United States. Other than their connection to NASRIDDINOV, GOLTSEV and PUZYREVA have no ties to the New York area or the United States. Moreover, the United States would not be able to recapture the defendants were they to enter the Russian embassy or consular facilities during their pretrial release, as law enforcement are prohibited from entering inviolable diplomatic facilities. Beyond this, the nature of the offense conduct, the defendants travel patterns and finances suggest that they have a network of overseas contacts and resources that they could leverage and use to facilitate their flight from the jurisdiction.

IV.    Conclusion

        For all of these reasons, the government respectfully submits that an order of detention pending trial is necessary to ensure that the defendants return to court.

                                                    Respectfully submitted,

                                                    BREON PEACE
                                                    United States Attorney

                                   By:    /s/ Artie McConnell
                                              Artie McConnell
                                              Ellen H. Sise
                                              Assistant U.S. Attorneys
                                              (718) 254-7000

cc:    Clerk of Court (by ECF)
       Defense Counsel (by ECF)